GULF COOPERAGE COMPANY *v.* POINDEXTER.

Opinion delivered February 9, 1914.

CONTRACTS—AGENCY—SUFFICIENCY OF EVIDENCE.—Appellant contracted with one S. to take his output of staves and to advance S. 75 per cent of the purchase price to meet his payroll. *Held,* under the evidence there was nothing to show that appellant held out S. as his agent, so as to make appellant liable on a contract, made by S. with appellee for the purchase of bolts.

Appeal from Ouachita Circuit Court; *Geo. W. Hays,* Judge; reversed and dismissed.

*Gaughan & Sifford,* for appellant.

Counsel review the evidence and contend not only that it does not support the verdict, but also that the court ought to have directed a verdict for the appellant.

*C. W. McKay,* for appellee.

The evidence clearly shows that Smith was the implied agent of a appellant in the purchase of the bolts from appellee; that he purchased as the agent of appellant, and that he was in so doing acting within the apparent scope of his authority. But if he was not the implied agent of appellant, then the acts and conduct of appellant were such as that it is now estopped to deny his agency. 31 Cyc. 1217-1220; *Id.* 1235-1237; 96 Ark. 456; 87 Ark. 378; 49 Ark. 323; 46 Ark. 132; 90 Ark. 296; 100 Ark. 240.

McCulloch, C. J. Appellant was engaged in business at Texarkana, Arkansas, and purchased white oak staves at different points in the State where they are manufactured.

One C. C. Smith was engaged in operating several small mills at different points and in manufacturing staves from bolts, and on October 1, 1911, appellant entered into written contract with Smith, whereby it agreed to lend Smith certain stave mill machinery, which was to remain the property of appellant during the life of the contract and be returned to Texarkana in good order at the expiration thereof; and it also agreed to purchase the output of that mill which was to be put up and operated at Stephens, and also the output of another mill located near Stephens, the prices for the staves being stipulated in the contract. Appellant also agreed in the contract to meet Smith's payrolls "to the extent of 75 per cent of the value of stock Smith might have on his stave yard on basis of above prices," the remaining 25 per cent of the purchase price of staves to be paid Smith when the staves were received by appellant at Texarkana.

The contract contained a further stipulation that the leases for the stave yard or yards were to be carried in the name of appellant as long as the advances of money made by it remained unpaid.

Smith put up the mill at Stephens and proceeded to operate the same, and in the course of operation entered into a contract with appellee Poindexter for the purchase of stave bolts.

Appellant, according to the contract, met Smith's payroll from time to time and purchased a quantity of staves from him, but finally the operation of the mill proved to be unprofitable to Smith, and he shut it down without fully complying with his contract with appellee, being indebted to appellee for stave bolts furnished in an amount which the jury found to be the sum of $387.50.

Appellee instituted this action against appellant to recover the amount alleged to be due, claiming that his contract for sale of the stave bolts was made with Smith as appellant's agent.

On trial of the cause the jury returned a verdict in appellee's favor for the amount named above, and an appeal has been prosecuted.

The contention of appellant is that the evidence is insufficient to sustain the verdict, and we are of the opinion that this contention is well founded. Appellee based his right to recover on the ground, first, that the contract itself between appellant and Smith constituted Smith as the agent of appellant to make contracts in the way of purchasing material and employing labor in the operation of the mill, and, in the second place, that as such is not the effect of the contract, appellant, through its agent, one Overton, held Smith out to be the agent of the appellant, and ratified his acts as such.

Counsel for appellee base their contention upon the decision of this court in *Hecht & Imboden* v. *Caughron,* 46 Ark. 132, and *Meadows* v. *Hudson,* 90 Ark. 296.

But we are of the opinion that neither of these cases sustains them.

In the case first cited, Hecht & Imboden, the parties

sought to be held liable in the case, took over a sawmill business and entered into an agreement with their debtor, who was the original owner, whereby the latter was to operate the sawmill for the benefit of the former and in their names until the amount of the indebtedness should be secured, and they agreed to furnish the mill with logs and pay the wages of employees. The action was instituted by a laborer to recover wages earned while at work at the mill, and this court said that under the contract, Hecht & Imboden either undertook to pay the wages and supply the demands of the business, in consideration of the benefits to be derived by them from their debtor, or that they constituted the latter their agent with power to bind them for the payment of those demands. The conclusion stated by the court was quite plain from the contract in that case; but it was altogether different from the contract here. Appellant only agreed to purchase the output of that and another mill operated by Smith, and to meet the payroll to the extent of 75 per cent of the value of the staves on the yard. Appellant never authorized Smith to incur obligations in its name, and the contract does not bear that construction. The contract did not authorize or compel Smith to incur any obligations in appellant's name. It merely bound him to sell and deliver to appellant the output of the mill, whatever that might be, and fixed the prices and methods of payment for such products, 75 per cent being paid on the payrolls and the remainder when the staves were delivered to appellant at Texarkana.

Nor does the clause of the contract relative to the leases impose any greater obligation or liability on the part of appellant. This clause of the contract was manifestly inserted for the purpose of giving appellant the possession of the stave yard, and, consequently, the possession of the staves as soon as they were piled there.

The last cited case relied on by appellee was, too, altogether different from the instant case, for that was merely one where a land owner directed a share cropper to hire hands to work the crop, and this court held that

that evidence was sufficient to show authority on the part of the tenant to employ laborers for the land owner.

The circumstances relied on by appellee as tending to show that appellant's agent authorized Smith to purchase material in appellant's name, and also ratified his acts in that respect, are that one Overton, who was paymaster for appellant, gave checks on two occasions for payment of material along with other items of the payroll, and also gave directions to Smith's buyer about prices he was to pay for stave bolts.

The giving of checks by Overton was entirely consistent with appellant's undertaking in the written contract, and did not amount to holding out Smith as appellant's agent.

The testimony shows that Overton's statement to the buyer was merely the delivery of a message from Smith to the buyer, who was Smith's agent.

Another circumstance relied on is that appellee asked Overton if he (Overton) would consent for the mill to remain at that location if appellee would keep it supplied with bolts, and that Overton replied in the affirmative.

This was not sufficient to amount to an implied representation that Smith was the agent or servant of appellant. It is not shown that appellant exercised any control over Smith further than the contract provided.

Another circumstance relied on is that Overton at one time complained to appellee that the major portion of bolts delivered to Smith's mill were red oak, whereas Smith had told him that the bolts were to run half white oak and half red oak.

Appellant's contract only called for white oak staves and, naturally, Overton was interested in the quantity of bolts of that material to be furnished; hence there was no force in his complaint to appellee as showing that he was attempting to control Smith's contracts or to make appellant responsible in any wise for them.

Upon the whole, we are unable to find a single circumstance in the relations between appellant and Smith, or appellant and appellee, which would amount to an im-

plied representation that Smith was authorized to make contracts in the name of appellant, or that the latter ever ratified any of Smith's acts.

There is no evidence that appellant, or its authorized agents, knew that Smith had ever undertaken to make contracts in its name.

This being true, there was no liability for this account, and the question should not have been submitted to the jury.

The case has been fully developed, and nothing could be accomplished by resubmitting it to another jury. Therefore, the judgment is reversed and the cause dismissed.